### MILLER v. SANFORD, Warden.
### No. 2015 H. C.

District Court, N. D. Georgia,
Atlanta Division.

Jan. 31, 1945.

William Roy Miller, in pro. per., for petitioner.

M. Neil Andrews, U. S. Atty., and Harvey H. Tysinger, Asst. U. S. Atty., all of Atlanta, Ga., for respondent.

RUSSELL, District Judge.

By his petition for the writ of habeas corpus, William Roy Miller asserts that he is illegally detained by the warden of the Atlanta Penitentiary. He states further the commitments under which he is held and attacks their legality. The writ was

issued and a hearing had and continued to allow the presentation of additional evidence.

The petitioner is held in custody by virtue of two sentences and commitments issued thereon; one from the District Court of the United States for the Northern District of Texas, at Dallas, and the other, provided to begin at the expiration of the Dallas sentence, imposed by the District Court of the United States for the Southern District of Texas, at Houston.

The Dallas commitment is pursuant to a sentence of the court of 7½ years to date from January 14, 1939. This sentence was actually entered on May 16, 1944, in conformity with the mandate and direction of the United States Supreme Court, 321 U.S. 752, 64 S.Ct. 634, which upon consideration of an appeal by the present petitioner, reversed the judgment of the Circuit Court of Appeals for the Fifth Circuit and remanded the cause to the District Court at Dallas with directions that the former orders and sentences of the court in three certain criminal cases there pending be clarified, and the legal sentences imposed thereby established. After a hearing, Judge Wilson determined that the legal sentences thereby imposed were 7½ years. It is unnecessary to state the circumstances giving rise to the appeals and the direction of the United States Supreme Court. One of the appeals is found in Miller v. United States, 5 Cir., 128 F.2d 519, and the other appeal from the sentence imposed subsequent to the decision in that case is Miller v. United States, 5 Cir., 136 F.2d 287, which affirmed the correction of the record by the trial court so as to fix a sentence of 8½ years total to be served on all of the counts of the three cases. On appeal from this affirmance, the Supreme Court ordered (321 U.S. 752, 64 S.Ct. 634): "on consideration of the stipulation between counsel for the petitioner and the Solicitor General, the judgment of the Circuit Court of Appeals is reversed and the cause is remanded to the District Court of the United States for the Northern District of Texas with direction that petitioner, after reasonable notice, be accorded a hearing on the issues involved before a judge other than the sentencing judge, and that at such hearing petitioner be allowed to be present and represented by counsel, with opportunity to adduce testimony and cross-examine witnesses." Thereafter, and in full accord with the provisions of this order, a hearing was had before his Honor, Judge James A. Wilson, who rendered an opinion and entered sentence totalling 7½ years.[1] No appeal was taken from this order and sentence, and it constitutes a final and binding determination of the sentence to be served by the petitioner under the Dallas cases. The above sentence of 7½ years, dating from January 14, 1939, as therein provided, and with good time allowances, has already been served. It therefore becomes necessary to consider the legality of the sentence imposed by the District Court at Houston which was provided to become effective at the expiration of the Dallas sentences.

On March 14, 1939, petitioner was arraigned and placed on trial in the United States District Court at Houston, Texas, upon an indictment in six counts charging violation of the provisions of section 347, 18 U.S.C.A. He was represented by counsel appointed by the court, entered a plea of not guilty, and he was by the jury found guilty on all of the counts of the indictment. He was thereupon sentenced by the court to imprisonment for the term of five years on each count; the five years imposed on each of the counts one, two and three, to be concurrent, and the five years imposed on each of the counts four, five and six to be concurrent of each other but cumulative of the sentences on counts one, two and three, making a total term of imprisonment of ten years to be served, with the proviso that the ten years be cumulative of the sentence theretofore imposed upon the defendant by the District Court at Dallas.

In the present proceeding, the petitioner attacks the validity of this sentence upon the ground of specified alleged errors committed during the course of the trial, and the action of the trial judge in ordering the removal of the petitioner to another district within the five days allowed for the taking of an appeal, after petitioner had given oral notice of his intention to appeal at the time of sentence; and further, on the failure of the trial judge to act upon petitioner's telegraphic request that he be returned to the jurisdiction of the sentencing court, and the "misunderstanding" on the part of the trial judge which resulted in the petitioner being deprived of the

---

[1] Not designated for publication.

transcript of the testimony for appeal purposes.

The questions arising from the contentions of the petitioner and the evidence introduced in this habeas corpus proceeding are: Was the petitioner prevented by the action of the trial court from effecting his appeal, and if so, the power and duty of a habeas corpus court to afford relief from such erroneous action.

The facts with reference to this question are in the main without dispute and are found as follows: Immediately after the imposition of sentence, the petitioner orally advised the court of his intention to appeal, and the trial judge entered upon his calendar sheet "notice of appeal J. V. A." The defendant was taken from the court room and counsel who had been appointed to represent him on the trial asked the court if he was under any obligation to represent the defendant upon the appeal and was informed by the court that he was not under any such duty, and was excused by the court from any further representation. He thereupon advised the defendant that he would not represent him should he undertake to appeal the case. Federal prisoners awaiting trial at Houston are confined in a jail at Conroe, Texas, some fifty miles from Houston, and within an hour or two on March 14th, the defendant was removed from the detention room at Houston to the jail at Conroe. Miller had been brought to Houston by writ of habeas corpus ad prosequendum from Dallas, and on March 16th, on application of the United States Attorney, the trial judge entered an order directing the marshal to return Miller to the marshal at Dallas, and on March 17th, this order was executed and in the afternoon of that day Miller was turned over to the federal authorities at Dallas and confined with other federal prisoners in the county jail there. On March 17th, the appointed trial counsel received from Miller a telegram sent from Dallas, Texas, at 4:35 P. M. as follows: "Wire me if you will take care of appeal, forward papers care of Dallas County Jail," and also on the same day he was advised by that counsel by wire "would prefer for you to handle appeal yourself letter follows" signed "John Schuhmacher." On March 18th, Mr. Schuhmacher wrote the defendant, Miller, care of Dallas County Jail, Dallas, Texas, as follows: "This is to acknowledge receipt of your telegram and to advise that I received your letter of March 15th and your letter of March 16th in this morning's mail and immediately made an appointment with Mr. Red for 1 o'clock. In the course of the conversation with him, I learned that you and Mr. Cole had been transferred back to Dallas, having been sent from that district to this district under instructions to return. I filed the motion for an instructed verdict and also the pauper's oath, and as soon as the judgment is prepared in its final form I will send you a copy of it together with copies of other papers requested by you. I am confident that you are fully capable of taking active charge of your appeal, and if I can be of any help I shall be willing to give some help in submitting rough drafts for your preliminary forms. Thanking you, I beg to remain, Yours very truly, John Schuhmacher." On March 18th, Miller sent a wire to the trial judge, Hon. James V. Allred, reading as follows: "Will you appoint an attorney to prepare and file an appeal in the matter of the United States vs. William Roy Miller and Robert Cole stop if not will you give us thirty days to file an appeal ourselves and issue an order that we be brought back into your district until the appeal is perfected please wire William Roy Miller, Dallas County Jail." The testimony of Judge Allred is that his records do not indicate the exact time of the day the telegram was received, but he assumes it was received on the date it was sent. On March 21st, in an envelope postmarked Dallas, Texas, March 20, 1939, and properly addressed, the Clerk of the United States District Court for the Southern District of Texas, at Houston, received from William Roy Miller certain papers, to-wit: "Motion for Appeal, Assignments of Error and Praecipe," all signed "William Roy Miller and Robert W. Cole per se," each dated March 20th. (Robert W. Cole was a codefendant with Miller in the case.) The Clerk refused to file these papers because not received within five days from the date of sentence. Petitioner testified upon this hearing, as he had theretofore asserted in his various proceedings which will be hereinafter referred to, that the written notice of appeal, etc., were prepared on March 18th and given to the Sheriff's agent in Dallas for mailing. He explains the papers being dated March 20th by the statement that as the 19th was a Sunday, he knew they could not reach the Clerk's office until the 20th, which was the last day allowed, and he therefore dated

the papers the date which they would actually reach the Clerk's office. I am unable to accept this explanation of the dating of the papers or to give credence to the testimony of the petitioner that there was a failure on the part of the Sheriff's agent to mail the papers on March 18th rather than the actual date of mailing of March 20th. While it must be admitted that the petitioner gives an appearance of frankness and truthfulness, upon consideration of this record I find two conflicts of his testimony as to material matters, and I am therefore unable to give full credence to the testimony of the date of delivery of these appeal papers for mailing. The material facts referred to are his testimony and that of his codefendant that the trial of the case was stenographically reported, as opposed to the statement of the trial judge that the case was not reported, and the certificate of the Clerk that the records of the court made no mention of the case being reported; and the further conflict of petitioner's testimony that he did not know his trial counsel had been excused from representation of him in the appeal, as opposed to the testimony of such counsel that he immediately informed petitioner that he had been excused and would not so represent him. I find as a fact that the testimony was not reported. True, this fact of the date of mailing, is cumulative of the effect of being removed from the district, the main point relied upon by the petitioner. Accepting the true date of mailing as that of the postal stamp, it is not made to appear that if the letter had been mailed on this date from Conroe, Texas, where the defendant would have been confined if he had remained within the jurisdiction of the sentencing court, it would not have reached the clerk's office in time. Thereafter, Mr. Schuhmacher did assist the defendant in preparing proper forms which were filed on April 5, 1939 and the record was forwarded to the Circuit Court of Appeals where the appeal was dismissed because not filed within five days of the time of sentence in compliance with the rules relating to appeals in criminal cases.

Miller thereafter filed with the Circuit Court of Appeals for the Fifth Circuit what he denominated "petition for certiorari to the United States District Court for the Southern District of Texas, Houston Division," in which he set up the facts now relied upon and which have been stated, and contended therefrom that his removal from the district prior to the expiration of the five days allowed for appeal rendered the judgment of the district court null and void, because after having notice of an intention to appeal, its action in removing him to another jurisdiction "caused said judgment to become final by exceeding its jurisdiction" and "thereby preventing defendant's written notice of appeal from reaching the Clerk of the District Court within the five days required by rule III of the Criminal Appeals Rules, [18 U.S.C.A. following section 688] resulting in defendant being deprived of his right to appeal from said judgment and preventing its finality." This petition was allowed to be filed in forma pauperis and was thereupon denied. Thereafter, and on July 11, 1942, Miller filed in the court at Houston a motion to set aside the judgment and sentence theretofore imposed upon him and for a new trial. This was predicated upon the same facts as had theretofore been set forth in the effort to appeal and the petition for certiorari. This matter was heard by his Honor, Judge Kennerly, who appointed counsel for Miller but who was later relieved because apparently Miller so desired it, and upon consideration of the case Judge Kennerly concluded that the court could not set aside the judgment and sentence and grant the motion for a new trial because of the judgment of the Circuit Court of Appeals dismissing the appeal because not timely filed in Miller v. United States, 5 Cir., 104 F.2d 343, and that of the Supreme Court denying certiorari therefrom in 308 U.S. 549, 60 S.Ct. 87, 84 L.Ed. 462, as well as the order of the Circuit Court of Appeals denying petition for certiorari filed December 5, 1941, certiorari denied 315 U.S. 799, 62 S.Ct. 626, 86 L.Ed. 1200.

In these circumstances, does the petitioner show any ground authorizing his discharge from imprisonment under the sentence imposed by the court at Houston? It may be conceded that neither the decision of the Circuit Court of Appeals dismissing the appeal because not timely filed, nor its denial of the petition for certiorari asserting excess of jurisdiction by which the sentence became invalid, are necessarily res adjudicata upon a habeas corpus court in which the validity of the sentence is attacked because of the action of the court which rendered the appeal in fact late. The denial of the petition for certiorari did not constitute an adjudication

that the validity of the sentence could not be attacked by habeas corpus. Certiorari is an extraordinary writ, and the common law writ is generally available only when there is no other remedy. It may likewise be said that the denial of the motion to set aside the judgment and for a new trial by the trial court, and the affirmance thereof by the Circuit Court of Appeals, does not preclude determination of the validity of the sentence by a habeas corpus court.

Frankness impels the statement that it is difficult to determine what limits, if any, there are upon the powers of a habeas corpus court as stated in Johnson v. Zerbst, 304 U.S. 458, 467, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461, "to look beyond forms and inquire into the very substance of the matter." Writs of habeas corpus have been issued where a convicted defendant was removed from the jurisdiction of the sentencing court and committed to the penitentiary in execution of the sentence pending an appeal. Tinkoff v. Zerbst, 10 Cir., 80 F.2d 464; Vermillion v. Adderhold, D. C., 4 F.R.D. 331. It has also been determined that action of the trial court preventing the entry of an appeal might authorize the discharge from the sentence which thereby became effective "if the consequences of the court's mistake could be remedied in no other way." Boykin v. Huff, 73 App.D.C. 378, 121 F.2d 865, 872. In Cochran v. Kansas, 316 U.S. 255, 62 S. Ct. 1068, 86 L.Ed. 1453, the judgment of the Supreme Court of Kansas, Cochran v. Amrine, 153 Kan. 777, 113 P.2d 1048, was reversed and the case remanded with directions to make specific determination of the question whether the petitioner had in fact been prevented by rules of the institution in which he was confined from perfecting an appeal from a judgment of conviction within the time permitted by law. Thus, while it has been said that "an appeal is not a necessary element of due process," McDonald v. Hudspeth, 10 Cir., 129 F.2d 196, 199; De Maurez v. Swope, 9 Cir., 104 F.2d 758, nevertheless the decision in Cochran v. Kansas, supra, clearly established that it is the duty of a habeas corpus court to inquire into the question of whether action by the court, or its officers, has in effect deprived the prisoner of his right of appeal. It is not thought that the mere fact that the prisoner has been so deprived would, without more, require his discharge from imprisonment. Certainly it must be incumbent upon the petitioner for the writ to proceed further and show that he has not only been deprived of a right, but that he has been prejudiced thereby, and clearly a habeas corpus court should not discharge a prisoner upon the mere showing that he has been unlawfully prevented from exercising the right of appeal provided by law. The prisoner must go further and show the court that as a result of such deprivation he is serving a sentence which in the opinion of the habeas corpus court would have been set aside had he been afforded his legal rights of appeal.

Not much assistance in determining this question is given by the reported cases. The question is comparatively simple where the prisoner has been committed pending an appeal for the matter can then be corrected by remanding him to await the determination of his appeal to the custody of the marshal of the district in which he was confined prior to removal to the penitentiary. This was the case in Vermillion v. Adderhold, supra, and in Tinkoff v. Zerbst, supra. In the Tinkoff case, the appeal had been entered and the petitioner was remanded upon giving bond, and enlarged for the purpose of perfecting his appeal. In Briggs v. White, 10 Cir., 32 F. 2d 108, at page 110, a proper course of action is indicated by the following statement: "While it is settled law that the writ of habeas corpus cannot be employed as a substitute for a writ of error and can go only to the questions of jurisdiction and legality of sentence, yet if the government, through its officers, makes it impossible for a convicted person to secure and prosecute a writ of error from such conviction, he has a remedy, by habeas corpus, to raise all of the questions he might have raised under the perfected writ of error." In Boykin v. Huff, supra, the judgment of the trial court refusing to grant the writ of habeas corpus (in circumstances which the appellate court determined had prevented the prisoner, as the result of action by the trial court, from perfecting an appeal), was affirmed upon the ground that under the circumstances of that case his appeal could still be had, and the court states that since the remedy by appeal remains open "the interests of justice would not be served by his discharge at the present time," citing cases wherein it had been held in immigration cases that where the order of deportation was illegal the alien should not be discharged but should be remanded

to the custody of the immigration officials for proper determination of the questions involved. As further stated in the Boykin case, supra, even if the prisoner had, as the result of the action by the court, been prevented from exercising a claimed and intended appeal, and if this amounted to the breach of a constitutional right, nevertheless the "appellant is not entitled to release at this time, if the wrong yet may be righted in some other way. He has been convicted of crime * * * in proceedings as to which no error has been shown except in relation to his right of appeal. If that right may now be given to him, it may turn out that his conviction was entirely proper, and if so he will not have been prejudiced by the court's error." Attention is also called·to the serious consequences of granting "relief so drastic as giving full freedom to one who on the appeal may be found to have been properly convicted, sentenced and imprisoned."

 Endeavoring to adduce the true rule to be applied in such an instance, and considering the holding in Cochran v. Kansas, supra, that the action of the state officers in preventing a timely appeal would result in deprivation of the defendant's liberty without due process of law contrary to the provisions of the 14th Amendment, as likewise holding that if such prevention of appeal was caused by the action of a federal court, or its officers, such action could be contrary to the Due Process Clause of the Fifth Amendment, I conclude · that the proper disposition of such a case is to first determine the circumstances which prevented a timely appeal, and if it be found that the action of the trial court did so prevent an appeal, it is proper for the habeas corpus court to evaluate the merits of the appeal. If it then be determined that the appeal was meritorious, the sentence should be declared ineffective and the petitioner remanded to the sentencing court for a new sentence from which an appeal could be entered, as could have been done originally but for the illegal deprivation of the right of appeal in regular procedure. Only in this way can effect be given to the rule in Briggs v. White, supra. Especially should this be true where, as in the present instance, any appeal either from the decision in habeas corpus, or in the subsequent appeal, if so provided, would be for decision by the court of the same circuit in which the case originated in the first instance. The exigencies of the case and the duty resting upon the habeas corpus court to dispose of the defendant as "law and justice may require," justifies such action. Certainly, if the trial habeas corpus court does not consider the questions sought to have been raised upon appeal, no just determination of the merits of the case in the first instance would be had, and the case would not properly come for decision before the proper forum, that is, the Circuit Court of Appeals. The "law" for such disposition is not clearly existent, but such procedure is in accord with my views of justice.

 In the present case the petitioner has established that he was removed from the jurisdiction of the sentencing court after he had given oral notice of his intention to appeal at the time of sentence. The actual travel consumed one of his five days. In the jail in the sentencing jurisdiction there was more opportunity of communication with the court through officers bringing defendants to and from the court. In Dallas there was no such contact, and petitioner was dependent upon mail and telegraph. Common knowledge justifies the statement that one confined in jail is, even under sympathetic custodial care, at great disadvantage in prosecuting any legal procedure. The petitioner having given oral notice of his intention to appeal, had a legal right to remain in the sentencing jurisdiction. This action of the court in relieving the attorney appointed to represent the defendant upon the trial affords no ground for complaint, and in fact, is not insisted upon by the petitioner here. The failure of the trial judge to grant petitioner's request that he be returned to the jurisdiction of the trial court for the purpose of perfecting his appeal presents however, a serious question, and in connection with the other facts and circumstances in the case, may have been the ·proximate cause of petitioner's lateness in filing his written notice of appeal, and if he had been returned, as he had a right to be, and as he requested, for the specific purpose of perfecting his appeal, the natural course would have been to carry him to the detention room at Houston and he could have thereupon proceeded in accordance with his desires and delivered to the court the required notice in time. Under all the circumstances, while no one fact can be singled out as responsible for preventing the petitioner from carrying into effect his announced intention to enter an appeal, the

circumstances together lead to the conclusion that unintentionally, and with no desire whatever to injure the defendant, (as is so clearly indicated by his subsequent acts in securing an attorney's services to assist the defendant), the trial court did by his order of removal of the defendant beyond the court's jurisdiction, and his failure to have him returned as requested, prevent the free exercise of the defendant's right of appeal, which, it must be concluded, under the circumstances here, would have been exercised but for such removal.

Following the rule above adopted for my guidance, it becomes necessary to consider whether such prevention was prejudicial to any substantial right of the defendant. From the evidence here adduced, I am unable to so hold, and conclude that the appeal if it had been taken would have resulted in no relief to the defendant.

The assignment of errors which were filed in connection with the attempt to appeal are that the court erred in not sustaining the motion to quash the indictment, and in not sustaining the motion to dismiss counts two and five of the indictment as to Miller. A copy of the indictment is in this record before me and there clearly was no merit in either of these motions. It is further assigned as error "that the court erred in allowing the government to present evidence to the jury that did not directly pertain to the charges as alleged in the indictment." As developed upon this hearing, the court permitted evidence of a postal inspector to the effect that the defendant had been guilty of similar transactions of knowingly passing counterfeit money orders. This evidence would have been proper as testimony of similar transactions bearing upon the intent of the defendant in the transaction then under consideration, and any appellate court would presume that the testimony was thus properly restricted in the absence of a showing to the contrary. I conclude the assignments of error in the original appeal sought are not meritorious.

Even if the defendant be entitled to add additional assignments of error in the petition for habeas corpus, and upon the hearing thereon, none of these now presented show any error. In the petition and by testimony the petitioner complains that the court committed error in admitting in evidence and himself reading to the jury a confession made by him. The only illegality in the confession asserted is that it was taken by the postal inspectors prior to a hearing before a United States Commissioner. Petitioner does not claim that it was not in fact voluntary, or that the period of detention before he was taken before the commissioner was unreasonable. Under these circumstances, the confession was admissible. Petitioner likewise complains that the sentence was rendered illegal by the conduct of the assistant United States Attorney in reading to the judge a communication from Judge Davidson from the Northern District of Texas to the effect that the defendant, Miller, was a dangerous criminal who had attempted to escape jail at Dallas and had been found in possession of a large knife. This occurred after the verdict of guilty and prior to sentence. The defendant testifies that he informed the judge that he was not guilty of the attempt to break jail or the possession of the knife, and that his codefendant confirmed this. In any event the sentence, being within the term permitted by law, was a matter for the discretion of the sentencing court, and an appellate court would not have interfered with the sentence even if it determined the occurrence improper.

It follows that the petitioner, while showing that he was doubtless wrongfully restrained in his efforts to appeal, and consequently deprived of such right, fails to show that such error resulted in any prejudice to him, or that any relief would have resulted from the appeal if he had been able to exercise such right, and therefore he fails to show any ground authorizing his discharge from custody, or for his return to the sentencing court. Indeed, he does not pray for such return but merely that he be discharged. However, I consider the propriety of disposition by return to such court inherent in a proper case.

Petitioner requests determination by the court that he has served the time required under a conditional release violator warrant which is on file with the warden of the penitentiary. This request is predicated upon the claimed illegality of the Houston sentence and the Dallas sentence, as a result of which he contends that having served under the illegal sentences, he should be given credit for the time served as in discharge of the time required under the conditional release violator warrant. The warden does not contend that this conditional release violator warrant has been

executed or authorizes the detention of the petitioner at this time. He asserts that it is held merely as a detainer. In any event, in view of the determination by this court of the validity of the Houston sentence, the question of whether the petitioner has already served the time required by the conditional release violator's warrant does not arise.

It is recognized that the holding herein which assumes what would have been the determination of the appellate court is novel. However, for the reasons stated, I conclude this to be proper in order that all questions affecting the legal rights of the petitioner might be determined so that the case may proceed if desired to the proper forum for such decisions. As stated above, in this case, upon appeal the case will proceed to the court properly having jurisdiction of the first appeal if it had been timely entered.

The petitioner having shown no ground authorizing his discharge from custody, or for his return to the sentencing court, it is thereupon considered, ordered and adjudged that the writ be discharged and the petitioner remanded to the custody of the respondent.