**Robert A. WILLIAMS, Appellant,**

v.

**Charles David HIGGINS, et al., and David Scurr, Appellees.**

**No. 67066.**

Supreme Court of Iowa.

July 20, 1983.

Francis C. Hoyt, Jr., Appellate Defender, and Douglas F. Staskal and Faith O'Reilly, Asst. Appellate Defenders, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Sp. Asst. Atty. Gen., and Patricia Mullen Hulting and Layne M. Lindebak, Asst. Attys. Gen., for appellees.

Considered by UHLENHOPP, P.J., and HARRIS, McGIVERIN, LARSON, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves an aspect of prison inmates' constitutional right of access to the courts. *See Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). *Cf. Nowlin v. Scurr,* 331 N.W.2d 394 (Iowa 1983) (legal facilities).

Appellant is a self-taught and self-styled "jail house lawyer" in the penitentiary. He has provided a variety of legal services to penitentiary inmates over the years. The penitentiary has other inmates providing such assistance, although none with appellant's volume of cases. The Prisoner Assistance Clinic of Iowa Law School also provides some assistance to inmates, and inmates may correspond directly with Iowa district judges of the district where the prison is located. Those judges appoint an attorney for every inmate who appears to express a legitimate complaint in the correspondence. Iowa district judges throughout the state also appoint attorneys at public expense for appeals of indigent defendants' convictions. Iowa R.Crim.P. 26. The penitentiary has a law library, and imposes no restrictions on inmates' giving legal advice or assistance to each other. In a class action in the United States District Court

for the Southern District of Iowa entitled *Parrott v. Ray,* No. 78–174–2, a stipulation was made regarding legal services in the penitentiary including jail house lawyers. No showing was made in this action that the stipulation was violated or that any proceedings were taken in the federal court in that connection.

The present case appears to grow out of a change in the facilities available to appellant when Charles Higgins became supervisor of counseling. The prison has a counseling area where the counselors meet inmates for sessions. The previous supervisor permitted appellant to meet inmates there, both from the general prison population and from the greater risk groups—those in protective custody and in maximum security. Members of the latter groups were made available in person to appellant through ad hoc arrangements by counselors.

Higgins did not regard this use of the counseling facilities and personnel to be appropriate. The arrangement also gave appellant special privileges which could hardly be extended to all jail house lawyers without disruption of counseling functions, and it posed a security risk as to the protective-custody and maximum-security inmates. He terminated appellant's use of the counseling facilities.

As a result, appellant was required to see his inmates on apparently the same basis as other jail house lawyers saw their inmates. He consulted with his general population inmates in the law library, in the "yard", or at mealtime in the dining facility. These conditions were not as favorable as previously existed, but appellant's objection to yard and dining facility meetings do not appear meritorious as the record shows that appellant has free time at hours when the library is open.

In addition, appellant was required to communicate with the greater risk inmates—those in protective custody or maximum security—in writing. He found these conditions less favorable, and he also claimed that prison officers read these letters and perhaps disrupted the flow of some of them.

Appellant therefore brought and prosecuted this action. Although his demands are numerous, he basically desires a return to the pre-Higgins use of the counseling facilities for carrying on his activities. After trial, the trial court found for appellees. Appellant appealed.

In addition to *Johnson,* the principal decisions of the United States Supreme Court on inmates' constitutional right of access to the courts are *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1974); *Cruz v. Hauck,* 404 U.S. 59, 92 S.Ct. 313, 30 L.Ed.2d 217 (1971); *Younger v. Gilmore,* 404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142 (1971); *Cochran v. Kansas,* 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453 (1942); and *Ex Parte Hull,* 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034, *rehearing denied,* 312 U.S. 716, 61 S.Ct. 823, 85 L.Ed. 1146 (1941).

Among these decisions, the nearest one to the present facts appears to be *Johnson,* where the Court struck down a prison rule prohibiting inmates from helping each other with legal matters. The Court held that such assistance could not be prohibited in the absence of an available alternative—which Tennessee did not provide—especially in view of the existence of illiterate or functionally illiterate inmates. But the Court also stated:

Even in the absence of such alternatives, the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and the seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities. Cf. *Hatfield v. Bailleaux,* 290 F2d 632 (CA 9th Cir 1961) (sustaining as reasonable regulations on the time and location of prisoner work on their own petitions).

But unless and until the State provides some reasonable alternative to assist inmates in the preparation of petitions for post-conviction relief, it may not validly enforce a regulation such as that here in issue, barring inmates from furnishing such assistance to other prisoners.

393 U.S. at 490, 89 S.Ct. at 751, 21 L.Ed.2d at 724.

We need not decide whether the state has provided a reasonable alternative here. In any event, the change which Supervisor Higgins imposed does not appear to us to rise to the level of constitutional magnitude, but comes within the internal administration of the prison which should be left to the officers there rather than to the courts.

The feature of the case which comes nearest to a constitutional problem is appellant's complaint that his letters to and from the greater risk inmates are censored and perhaps disrupted. We caution the prison authorities to comply in this regard with the mandate of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Our affirmance of the judgment in this case is without prejudice to a potential action directed to that point should prison officials fail to comply with *Wolff* requirements in connection with written communications between appellant and inmates in protective custody and maximum security.

Conditions in the law library for consultation with general population inmates may not provide complete and perfect confidentiality, but they appear to furnish a "reasonable" accommodation within the requirements of *Johnson.*

AFFIRMED.